UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MOORE, an individual, and
THE RELIANT GROUP, LLC, a Michigan
limited liability corporation,

    Plaintiffs,

vs.                                                                                                    Case No. 15-14318

HIGHTOWERS PETROLEUM CO.,
an Ohio corporation, and
STEPHEN HIGHTOWER, an individual,                HON. AVERN COHN

    Defendants.

_____/

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER (Doc. 15)**

### I.    INTRODUCTION

#### A.    The Case

This is a breach-of-contract case. Plaintiffs The Reliant Group, LLC (Reliant) and its owner, Brian Moore (Moore), are suing Defendants Hightowers Petroleum Company (HPC) and its chief executive officer (CEO), Stephen Hightower (Hightower).[1]

HPC, a petroleum wholesaler, contracted with Reliant to solicit sales on its behalf in Michigan. In an "Agent Agreement," HPC agreed to pay Reliant commissions based on the net profits generated from sales it procured. Plaintiffs claim Hightower

---

[1] The complaint asserts claims (Counts IV-VI) against Hightower in his personal capacity for the torts of fraud and conversion in handling accounting records. The remaining claims (Counts I-III) for breach of contract and violation of sales commission statutes name HPC as the defendant.

manipulated HPC's accounting records to underreport Reliant's commissions. Plaintiffs seek damages based on an estimated $10 million in unpaid commissions.

### B.    Defendants' Motion

Defendants have moved to dismiss for lack of personal jurisdiction as to Hightower and for improper venue as to the subject matter of the case. (Doc. 15). Alternatively, defendants seek a transfer of venue to the Southern District of Ohio.

At a July 20, 2016 hearing, the Court made reference to the vagueness of the allegations against Hightower as distinct from HPC.[2] However, the issue of whether the Plaintiffs have stated a claim on which relief can be granted against Hightower is not before the Court. For the reasons that follow, the motion will be denied.

## II.    BACKGROUND

### A.    Origin of HPC-Reliant Relationship

Moore describes himself as a "business consultant" and "sales agent" in Michigan with "long-established" contacts in the automotive industry. (Doc. 16-1 at 3). He was employed as an engineer for General Motors (GM) and, after that, as a sales agent for a Tier 1 Supplier to GM. In 2003, GM enlisted Moore's help as an outside expert in a national search for "several potential GM minority business suppliers." (*Id.*).

As part of his search, Moore visited HPC in Ohio and determined that the company had "potential" as a future supplier for GM. (*Id.* at 4). Moore concluded that, if certain improvements were made to HPC's business practices, HPC "could be a good fuel supply service alternative for GM." (*Id.*). GM agreed.

---

[2] From what was gleaned at the hearing, the Plaintiffs' inclusion of Hightower as a party apart from HPC and his opposition to himself as a defendant appear to be no more than, as Cicero said, e*xcitabit fluctus in simpulo*—a tempest in a teapot.

Moore set up a meeting in Ohio with HPC and GM representatives. Afterward, HPC retained Reliant to improve HPC's business practices and serve as HPC's sales agent in Michigan.

### B. Agent Agreement

The arrangement was memorialized in an Agent Agreement executed in Ohio. The agreement stated HPC would pay Reliant commissions ranging from 10% to 28% of the net profits Reliant generated, depending on whether sales came from "new business" or pre-existing clients and exceeded an annual compensation threshold. (Doc. 10 at 26). The agreement included a formula for computing commissions and provided Ohio law governs the contract's interpretation.

### C. Sales Efforts

From 2004 through 2008, Moore on behalf of Reliant worked in HPC's Ohio office to implement improvements in its business practices. Following these efforts, HPC secured the GM account in 2009. From then on, Moore in Michigan met potential customers and generated sales for HPC. Plaintiffs say HPC's revenues increased by hundreds of millions of dollars because of Moore's efforts.

### D. Hightower's Role

Hightower was closely involved in managing HPC's expansion in Michigan. A former HPC customer relations manager who prepared monthly financial reports says he "regarded Michigan as a priority in HPC's business plan." (Doc. 17-1 at 7). Specifically, Hightower "would travel to Michigan frequently to meet with Mr. Moore, [and] to meet with [HPC's] Michigan customers like GM." (*Id.*). The complaint alleges

Hightower made quarterly trips to GM plants in Michigan, and semi-annual trips to the Michigan facilities of Fiat Chrysler Automobiles (Chrysler). (Doc. 10 at 6).

Importantly, the complaint alleges Reliant was underpaid because Hightower "caused his company to fraudulently misrepresent and conceal the data upon which [the] commissions were (or should have been) based." (*Id.* ¶ 7). Specifically, the complaint says Hightower "manipulated the commission accountings" and "misrepresented the costs incurred in computing [net profits] under the Agent Agreement." (*Id.* ¶¶ 58-59).

### E. Commission Checks

Each month, Reliant prepared a commission earnings statement and e-mailed it to HPC. HPC then reviewed the calculations and issued a check to "Moore/Reliant." The commission checks were mailed to Reliant in Michigan.

## III. DISCUSSION

### A. Personal Jurisdiction

Hightower specifically challenges jurisdiction over him personally—not jurisdiction over HPC. The claims asserted against Hightower are:

Count IV: Fraud, Silent Fraud, Fraudulent Concealment

Count V: Unjust Enrichment

Count VI: Statutory and Common Law Conversion

Hightower disputes whether the Court has limited, personal jurisdiction over him.

#### i. Legal Standard

A district court's exercise of personal jurisdiction in a diversity case must be "(1) authorized by the law of the state in which it sits, and (2) in accordance with the

Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). Michigan's long-arm statute extends to the limits of the Due Process Clause. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir. 1981).

The Sixth Circuit uses a three-part test to determine if personal jurisdiction accords with due process. *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Specifically, (1) "the defendant must purposefully avail himself of the privilege of acting in the forum state," (2) "*the cause of action must arise from the defendant's activities there*," and (3) the defendant's acts "must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (emphasis added).

As to the second prong of *Southern Machine*, the Sixth Circuit says a plaintiff must "demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 507 (6th Cir. 2014). This means that there is a "substantial connection" between the cause of action and the defendant's in-state contacts and "the operative facts of the controversy arise from [those] contacts." *Id.*

### ii.   Analysis

Hightower concedes for purposes of his motion that his contacts with Michigan are sufficient to satisfy the first prong of *Southern Machine*, purposeful availment. Hightower instead confines his arguments to the second prong, that is, whether Plaintiffs' claims "arise from" Hightower's activities in Michigan.

Hightower says Plaintiffs cannot pursue their claims in this district because his wrongdoing occurred, if at all, in Ohio. This is too literal an interpretation of the arise-from prong of *Southern Machine*.

This case is about payments. Reliant performed services, in the form of procuring petroleum sales, in Michigan in exchange for the promise of HPC's commissions. In managing the procurement of sales in Michigan, Hightower was the "alter ego" of HPC for purposes of liability in its dealings with Reliant. *See Bucyrus-Erie Co. v. Gen. Products Corp.*, 643 F.2d 413, 418 (6th Cir. 1981) (observing that a party who dominates and controls a corporation, and uses that domination and control to commit fraud or wrongdoing, becomes an "alter ego" of the corporation).

Hightower's in-state contacts include directing that commission checks be sent to Reliant and visiting priority customers to support Reliant's efforts to boost Michigan sales under the Agent Agreement. These efforts were rewarded by a significant amount of new business being generated for HPC from Michigan corporations such as GM.

Hightower's personal involvement with sales in Michigan bears a "substantial connection" to Plaintiffs' claim that Hightower cheated them out of commissions for those sales. To Plaintiffs, Hightower got the benefit of the bargain—increased sales for HPC—without paying the appropriate cost for that benefit—commissions due to Reliant. Hightower participated in the relationship with Reliant by going to Michigan and having payments sent there. This participation has a "causal nexus" with the claim that HPC did not live up to its end of the bargain. Hightower's failure to ensure that appropriate payments were made derives from the parties' relationship itself under the terms of the Agent Agreement.

Of course, if the allegations are true, the Defendants are correct that Hightower's activities would have involved misappropriation and/or withholding of commission payments at HPC's corporate office in Ohio. However, this does not mean Hightower's connection to sales in Michigan does not have a causal link with a breach of the Agent Agreement. It only means that one aspect of these activities occurred in Ohio. All the relevant activities need not originate in the forum state; it is enough if the claims arise, "at least in part," in Michigan. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).

Viewing the facts in the light most favorable to the Plaintiffs, they have met their burden to show these claims "arise from" Hightower's contacts with Michigan.

### B. Venue

#### i. Legal Standard

After an objection to venue is raised, the plaintiff has the burden to establish that the chosen venue is proper. *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000). The Court may consider facts outside of the complaint, but must draw reasonable inferences and resolve factual disputes in the plaintiff's favor. *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).

A proper venue for civil actions includes "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This means "any forum with a substantial connection to the plaintiff's claim," of which there may be multiple. *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998). A given forum need not be the "best" venue, or the one where the "most substantial" events took place. *Id.*

### ii. Analysis

Defendants say venue in the Eastern District of Michigan is improper because a substantial part of the events in this case occurred in Ohio, not Michigan. They reiterate that defendants' activities in Michigan are not materially related to plaintiffs' claims.

Again, this case is about payments under a contract. The plaintiffs performed sales services in Michigan in exchange for a promise of commission payments that were—or were not—received in Michigan. These in-state ties are enough to establish "a substantial connection" between Michigan and the plaintiffs' claims for damages based on non-payment of the commissions. Although defendants would prefer the case be tried in Ohio, there is no requirement that plaintiffs' chosen forum be the "best," only that it have a substantial relationship to the case in one way or another.

### C. Transfer of Venue

### i. Legal Standard

A district court may transfer "any civil action to any other district or division where it might have been brought" for convenience to the witnesses and parties and in the interests of justice. 28 U.S.C. § 1404(a). The Court has "broad discretion to grant or deny a motion to transfer." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

The Court gives deference to the plaintiff's choice of forum, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Factors to be considered are "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing

witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice." *Int'l Show Car Ass'n v. Am. Soc. of Composers, Authors & Publishers*, 806 F. Supp. 1308, 1310 (E.D. Mich. 1992).

### ii. Analysis

Defendants request a transfer of venue to the Southern District of Ohio. They primarily argue that convenience of the witnesses would be served by the transfer given their plans to call as witnesses four people—all employees or former employees of HPC—who are Ohio residents.

A transfer of venue is not appropriate. The Court defers to the Plaintiffs' choice of forum unless the balance of equities strongly favors another forum. The fact that Defendants' employees may be called to travel from Ohio to Michigan and testify is not the sort of inconvenience that merits transferring venue.

Defendants cite four cases in which the Court granted a transfer of venue under, they say, analogous circumstances. The cited cases are dissimilar.

*Gen. Motors Corp. v. OHM Remediation Servs. Corp.*, No. 96-70141, 1996 WL 426498 (E.D. Mich. Apr. 24, 1996), concerned an environmental cleanup of a GM plant located in New York. There was a contract dispute between GM and the contractor performing the cleanup. GM filed suit in the Eastern District of Michigan and, shortly after, the contractor sued over the same issues in the Northern District of New York. The dispute was about a contract performed in New York. This case is about payment under a contract performed in Michigan. *GM* involved concurrent litigation raising identical issues in another jurisdiction. This is not such a case. *GM* had an impact on the environment of New York. This case does not raise fundamental issues of fairness.

*Flagstar Bank, FSB v. The Loan Experts Corp.*, No. 10-10906, 2010 WL 2805289 (E.D. Mich. July 15, 2010), and *Flagstar Bank, FSB v. Baycal Fin. Corp.*, No. 11-11494, 2011 WL 2976822 (E.D. Mich. July 21, 2011), are mortgage fraud cases brought by a Michigan lender for events originating in California. Loan packages were submitted in California by California corporations and the closings took place there. In *Loan Experts*, the properties and sellers were in California. In *Baycal*, nearly all properties, and all buyers, were in California. Venue was transferred because "the locus of the fraud [wa]s California." This is a case over payments for sales made in Michigan.

*Travelers Prop. Cas. Co. v. Hillerich & Bradsby, Co.*, No. 05-71497, 2005 WL 2206161 (E.D. Mich. Sept. 12, 2005), was an insurance case in which the plaintiff insurer sought a declaration of its rights under policies it issued to the insured, a Kentucky corporation. The policies were issued in Kentucky and governed by Kentucky law, which provided that the insured's "subjective expectations" affected coverage. In light of this state-law wrinkle, the Court concluded there was a "real potential" for Kentucky witnesses to be called at trial. This case is about payments under a contract for sales in Michigan. The only out-of-state witnesses mentioned are HPC's employees or former employees, located in Ohio. Although the contract was negotiated in Ohio, the principal issue is whether Plaintiffs were underpaid for their work in Michigan. The calculus in terms of convenience and justice is not the same.

Ralph Waldo Emerson once said "[a] foolish consistency is the hobgoblin of little minds." The Court has little occasion to consider Emerson's counsel here, as there is no inconsistency between the Defendants' cited cases and this one.

## IV.    CONCLUSION

For the reasons discussed above, the Defendants' motion to dismiss or, in the alternative, to transfer is DENIED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  July 27, 2016
      Detroit, Michigan